JUSTICE COTTER
dissents.
¶13 I dissent. It is my view that the District Court, in each instance in which it had to evaluate and reevaluate the distribution of this estate, *269 got it right and, in each instance in which this Court evaluated the District Court’s decisions, we got it wrong. I would affirm the District Court Order presently on appeal in all respects.
¶14 First, Lucile’s will did not reflect an intent that her estate be distributed pursuant to its value at her death as calculated for federal estate tax purposes, our decision in Snyder II notwithstanding. Her intention to value the estate pursuant to federal and state tax applied only in the event that Snyder’s, Inc. was unincorporated at the time of her death, a happenstance that did not occur. The District Court reached the correct decision in this regard; however, we erroneously reversed that decision in Snyder II. In so doing, we disregarded the clear meaning of the language of her will, and the provisions of §72-3-902(2)(b), MCA, which requires that unless a contrary intention is indicated by the will, the property to be distributed in kind shall be valued at the fair market value as of the date of its distribution.
¶15 In its most recent decision which we now reverse, the District Court said that to distribute the Flathead County property to Lois “would create a significant inequity, which Lucile expressed several times she desired to avoid.” The District Court is right. If anything is clear from Lucile’s will (though I submit the will is clear on its face), it is that her children were held by her in equal regard, and that her ultimate intent was to see that her estate is equally distributed between them. In my judgment, we have ignored her intention on three occasions now. As a result, one child will receive property valued at $187,488.00, while the other will receive property arguably worth $5 million plus additional estate assets of $27,488.00. This is unconscionable.
¶16 I have no disagreement with the Court’s general discussion of the flaw of the case” doctrine. However, in my judgment, this is not a hard and fast rule when its application presents a clear error resulting in a manifest injustice. In State v. Zimmerman, 175 Mont. 179, 573 P.2d 174 (1977), we vacated a conviction, notwithstanding our previous and opposite decision in the same case on application for a writ of supervisory control. Granted, we did so citing an exception to the general rule of flaw of the case” to the effect that, where the case must be remanded to the district court for further proceedings because of reversal on an unrelated issue, the court may take the opportunity to correct a manifest error in its former opinion. Zimmerman, 175 Mont. at 185, 573 P.2d at 178. While the case is not precisely on point, it does nonetheless demonstrate that the flaw of the case” doctrine is not set in stone in Montana.
*270 ¶17 In Beal v. Beal, 209 P.3d 1012, 1016-17 (Alaska, 2009), the Alaska Supreme Court stated:
The law of the case doctrine, which is “grounded in the principle of stare decisis” and “akin to the doctrine of res judicata” generally “prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case.” Previous decisions on such issues-even questionable decisions-become the Taw of the case” and should not be reconsidered on remand or in a subsequent appeal except ‘Where there exist ‘exceptional circumstances’ presenting a ‘clear error constituting a manifest injustice.’ ” [Emphasis added.]
Accord, Mid-American Pipeline Co. v. Four-Four, Inc., 2009 UT 43, ¶ 14, 216 P.3d 352; Miss. Dept. of Human Services v. McNeel, 10 So. 3d 444, ¶ 35. See also Brown v. State, 953 P.2d 1170, 1174 (Wyo. 1998), in which the Supreme Court of Wyoming said: ‘The law of the case [doctrine] is a discretionary rule which does not constitute a limitation on the court’s power but merely ‘expresses the practice of courts generally to refuse to reopen what has been decided.’ ” I agree with this statement. The doctrine, while important, does not limit a court’s power to reverse a previous decision if it is a clear error and results in a manifest injustice. I therefore respectfully disagree with the Court’s conclusion here that the doctrine compels the outcome we reach. Opinion, ¶ 8.
¶18 In my view, if we are free (and it is evident from our jurisprudence that we are) to overturn previous decisions of this Court in other cases where justice so requires, we should be equally free and willing to do so where we have made a manifest error in a former decision in the same case. I believe we have done so in these Snyder cases, and I would so rule, notwithstanding the Taw of the case” doctrine. I would affirm the District Court’s decision and put an end to this litigation, giving effect to Lucile’s intention that her children receive equal distribution of her estate. I dissent from our refusal to do so.